United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAVIER CALDERON,

Plaintiff,

v.

C. KOENIG, et al.,

Defendants.

Case No. 19-cv-07949-HSG

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Re: Dkt. No. 28

Plaintiff, an inmate at Correctional Training Facility ("CTF"), filed this *pro se* action pursuant to 42 U.S.C. § 1983 alleging that CTF Warden Koenig and CTF Central Facility Captain C. Freeman failed to take reasonable steps to abate a known excessive risk to his safety in violation of the Eighth Amendment. Dkt. Nos. 1, 13. Now pending before the Court is Defendants' motion for summary judgment for failure to exhaust administrative remedies. Dkt. No. 28. Plaintiff has not filed an opposition, and the deadline to do so has since passed. For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment.

**FACTUAL BACKGROUND**

**I. Complaint**

The complaint makes the following relevant allegations.

In early 2018, violence occurred at a different correctional facility between prisoners affiliated with the Southern prison gang and the Bulldog prison gang. As a result, prisoners statewide affiliated with prison gangs other than Bulldogs (i.e. Southern, Mexican Mafia, Paisa, and White Nationalist) agreed to attack Bulldog affiliated prisoners. CTF officials, including defendants Koeing and Freeman, were aware that the violence would spread to CTF because (1) prior incidents where a gang-related incident at one prison triggered riots at other California

prisons; (2) prisoners made anonymous calls to state officials and filed administrative grievances warning of the impending riots; (3) CTF inmates sent anonymous notes to CTF officials warning of the impending riots; and (4) on August 2, 2018, Plaintiff's family spoke directly to defendant Freeman and warned him of the impending riots. Dkt. No. 1 at 10-11.

On August 5, 2018, a riot broke out at CTF among gang-affiliated prisoners. Plaintiff is not gang-affiliated but he was attacked with rocks and blunt objects. Plaintiff was also kicked, punched, and stomped on by gang-affiliated prisoners. Due to the attack, Plaintiff suffered the following permanent injuries: loss of vision, dizziness, hearing loss, headaches, ringing in the ears, neck and back pain, and psychological and emotional trauma. Dkt. No. 1 at 11.

The complaint seeks declaratory and injunctive relief as appropriate; $100,000.00 per defendant for each category of damages: compensatory damages; exemplary damages; mental anguish damages; nominal damages; punitive damages; economic and non-economic damages. The complaint also seeks medical and related expenses; lost earnings, past and future; costs of suit; interest; and attorneys' fee and costs. Dkt. No. 1 at 14-15.

The Court found that the complaint stated a cognizable Eighth Amendment claim against defendants Koenig and Freeman for failing to take reasonable steps to abate a known excessive risk to Plaintiff's safety. Dkt. No. 13.

**II. CDCR Administrative Grievance Process**

During the relevant time period, the California Department of Corrections and Rehabilitation ("CDCR") provided inmates with the following administrative remedies, also referred to as the administrative grievance process.[1] The CDCR provided its inmates the right to appeal administratively "any policy, decision, action, condition or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or

[1] The regulations that set out the features of the administrative grievance process for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1, 2020, California Code of Regulations, Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487. Because the relevant events took place in 2018-2019, the current administrative grievance process does not apply to Plaintiff's claims. All the citations in this order to the California regulations are to the regulations in place during the period relevant to this action, rather than to the current regulations.

her health, safety or welfare." 15 Cal. Code Regs. § 3084.1(a) (2019). Grievance issues are separated into two categories: custody issues and healthcare issues.

To grieve a custody issue, a prisoner submits a CDCR Form 602 and describes the specific issue being grieved and the relief requested. 15 Cal. Code Regs. § 3084.2(a) (2019). The prisoner must state all facts known and available to him regarding the issue being grieved at the time of submission; and list all staff members involved and describe their involvement in the issue. 15 Cal. Code Regs. § 3084.2(a)(1), (4) (2019). To exhaust available administrative remedies for custody grievances, a prisoner must have his grievance proceed through three levels of review: (1) a first formal level filed with one of the institution's appeal coordinators; (2) a second formal level filed with the institution head or designee; and (3) a third formal level filed with the CDCR director or designee. 15 Cal. Code Regs. § 3084.7 (2019). Pursuing a custody grievance through the third and final level satisfies the exhaustion requirement set forth in 42 U.S.C. § 1997e(a). 15 Cal. Code Regs. § 3084.1(b) (2019).

To grieve a healthcare issue, a prisoner submits a CDCR Form 602 HC and "explain[s] the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon [his] health and welfare for which [he] seek[s] administrative remedy." 15 Cal. Code Regs. §§ 3999.226, 3999.277(a) (2019). The prisoner must state all facts known and available to him regarding the healthcare issue being grieved at the time of submission; and must also identify all staff member(s) involved. 15 Cal. Code Regs. § 3999.226(g) (2019). Healthcare grievances are subject to two levels of review: an institutional level of review and a headquarters level of review. 15 Cal. Code Regs. § 3999.226(a)(1) (2019). A headquarters' level review exhausts the prisoner's administrative remedies for the healthcare grievance. 15 Cal. Code Regs. §§ 3087.5(h), 3999.230 (2019).

**III. Plaintiff's Grievances**

In his complaint, Plaintiff identifies Grievance No. CTF-HC-19000329 as exhausting his administrative remedies for his Eighth Amendment claim.[2] Dkt. No. 1 at 2. Grievance No. CTF-

[2] On or about October 6, 2019, inmate Santaigo Grajeda filed a group grievance, Group Appeal Grievance No. CTF-S-19-0334. Plaintiff (and numerous other inmates) joined in this grievance.

HC-19000329 references Grievances Nos. CTF-S-18-02452, CTF-S-18-02454, and CTF-HC-18001410. Dkt. No. 1-2 at 2. The Court examines each of these four grievances in chronological order.

**A. Grievance No. CTF-S-18-02452**

On or about August 28, 2018, inmate Guadalupe Lopez submitted Grievance No. CTF-S-18-02452, which alleged that prison officials' failure to respond to the August 5, 2018, riot, resulted in inmates suffering severe injury; and constituted deliberate indifference, deliberate failure to intervene during a melee, and deliberate failure to protect prisoners. Dkt. No. 28-3 at 8-11. Inmate Lopez sought monetary compensation for his injuries. This grievance bypassed the first level of review and was denied at the second level on the grounds that request for monetary compensation is outside the scope of the prison grievance process, the response was adequate and effective enough to stop the injury to inmates, and CDCR management and an outside agency had found that the prison's response to the riot complied with departmental regulations. Dkt. No. 28-3 at 12-13. Plaintiff is not associated with this grievance.

**B. Group Grievance No. CTF-S-18-02454**

On August 26, 2018, inmate Anthony Martinez submitted a group grievance, Group Grievance No. CTF-S-18-02454, which alleged that prison officials failed to respond reasonably to the August 5, 2018 riot because they failed to intervene during a lull after the first attack; locked themselves into positions allowing for multiple attacks; failed to discharge lethal weapons when victims were being stabbed and when assailants got up from the ground to attack the grievants a second time; and used excessive force on, and denied medical care to, the victims. Dkt. No. 28-3

---

Group Appeal Grievance No. CTF-S-19-0334 was titled "Unfair Preferential Treatment / 14th Amendment violations," and argued that prison officials were violating the Equal Protection Clause by designating the Bulldogs as victims of the August 14, 2019, riot and allowing them more privileges than the other inmates affected by the riots (the Mexican Mafia, Surenos, and Paisas). Dkt. No. 28-1 at 12-28. The second level of review granted the requests that the grievance be processed as a group grievances and that all affected inmates be treated equally with respect to privileges, but found that the modified program treated the affected inmates fairly. Dkt. No. 28-1 at 29-32. This grievance was rejected at the third level as untimely submitted. Dkt. No. 28-1 at 7. Plaintiff does not identify this grievance as raising the claims in this action. The Court's review of this grievance indicates that this group grievance raises claims separate from the claims in this action in that it alleges unequal treatment after the August 5, 2018 riot, and does not raise claims regarding prison officials' responsibility or ability to protect inmates from the riot.



United States District Court
Northern District of California

at 17-23. Twenty-seven inmates joined in this grievance. Dkt. No. 28-3 at 21-23. Plaintiff did not join in this grievance, and is not otherwise associated with this grievance.[3]

**C. Healthcare Grievance No. CTF-HC-18001410**

On or about September 25, 2018, Plaintiff filed Healthcare Grievance No. CTF-HC-1800-1410, seeking reconsideration of RN Estamo's decision denying him orthopedic boots and requesting orthopedic boots. Plaintiff stated that he needed orthopedic boots because he worked in the yard and as a porter on a voluntary basis; his left knee was injured; he had a chrono for the lower bunk due to his knee being in pain; and tennis shoes did not have the necessary support to alleviate the pain. Dkt. No. 28-2 at 10-13.

On December 4, 2018, this grievance was denied at the institutional level on the grounds that a request for a referral to orthotics had been submitted based on Plaintiff's diagnosis of hammer toes on both feet. Dkt. No. 28-2 at 14-15. On January 3, 2019, Plaintiff appealed this denial, stating that the reply was unacceptable because it was delivered to him a month late, on January 2, 2019; because his preexisting condition negated all CDCR policy changes and that medical appliances were now free under state insurance policy mandates; and because denying him his orthopedic footwear constituted deliberate indifference and denial of proper medical care. Dkt. No. 28-2 at 11.

On March 14, 2019, this grievance was denied at the headquarters' level response, on the grounds that there was no indication from x-rays or in-person evaluations that orthopedic boots were medically necessary, and that the plan of care was temporary knee braces and supportive shoe inserts. Dkt. No. 28-2 at 6-7.

//

---

[3] This grievance bypassed the first level of review and was denied at the second level on the grounds that monetary compensation is outside the scope of the prison grievance process; the grievants' participation in the riot caused their injuries; medical treatment was offered first to the more seriously injured inmates; the response was adequate and effective enough to stop the injury to inmates; and CDCR management and an outside agency had found that the prison's response to the riot complied with departmental regulations. Dkt. No. 28-3 at 24-25.

This grievance was also denied at the third level of review with the finding that the grievants' allegation that correctional staff failed to take appropriate action during the riot was unfounded, and that the grievants had not presented sufficient evidence to warrant modification of the second level decision. Dkt. No. 28-3 at 15-16.

**D. Healthcare Grievance No. CTF-HC-19000329**

On April 5, 2019, Plaintiff submitted healthcare grievance No. CTF-HC-19000329, stating that he was seeking "monetary compensation for injuries suffered." Dkt. No. 1-2 at 2. Plaintiff described the issue as follows:

> This grievance is submitted in compliance with procedures set forth in the California Code of Regulations, Title 15 ("15 CCR"), section 3084 et seq.; Department of Operations Manual ("DOM"), section 54100.1 set seq.; and in compliance with standards set forth in Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910 (2007) and Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006). FACTUAL ALLEGATIONS WITH RESPECT TO HEALTH AND SAFETY: In a nutshell, failure to intervene, staging, failure to protect, and deliberate indifference described in Appeal Nos. CTF-S-18-02452, CTF-S-18-02454, CTF-HC-180001410, and related appeals, CAUSED MY PERMANENT DISABILITIES.
>
> I was finally scheduled to see my PCP (Dr. E. Bridgnell) on March 27, 2019 regarding the serious physical ailments I was experiencing. When I arrived, I was accosted by a Correctional Sergeant and other Correctional Officers. I was questioned why I sought medical care for my serious symptoms. I explained that I have in fact been seeking medical treatment for the injuries I received as a result of the staged events described at the onset. The injuries I sustained are, but not limited to: (1) vision loss; (2) dizziness; (3) lightheadedness; (4) hearing loss; (5) headaches; (6) ringing in my ears; (7) neck pain; (8) back; and, (9) foot and leg pain. Dr. Bridgnell examined me and determined that there is indeed a problem with my eyes. I was prescribed ear drops for the debilitating ringing in my ears. A request for x-rays and/or an MRI had been made to determine the exten[t] o[f] my head injury. Dr. Bridgnell informed me that my injuries may be permanent. Upon information and belief, the CCHCS and Department of General Services (DGS), Office of Risk Management, Government Claims Program may monetarily compensate me for my injuries. I seek compensation.

Dkt. No. 1-2 at 2, 4 (emphasis in original); *see also* Dkt. No. 28-2 at 24-31.

On June 3, 2019, this grievance was denied at the institutional level on the grounds that healthcare grievance No. CTF 18001410 showed that orthopedic boots were not clinically indicated; Plaintiff's concerns of neck pain, headache, mild dizziness for two months, and ear wax were addressed at a March 27, 2019 primary care provider appointment; a routine x-ray of the cervical spine had been ordered and was pending scheduling; no additional diagnostic imaging was recommended or ordered by the PCP; and monetary compensation was outside the jurisdiction of the health care grievance process. Dkt. No. 28-2 at 32-33. The denial also addressed the grievance's complaint regarding staff, directing Plaintiff to seek relief via other channels:

//

//

> A complaint[] against a custody staff member or members is not a health care services issue over which California Correctional Health Care Services has jurisdiction. As such, your concerns should be addressed through the appropriate custody channels at your institution.

Dkt. No. 28-2 at 31.

> On June 29, 2019, Plaintiff appealed this denial as follows:
>
> Grievant incorporates all claims, allegations, and request made in sections (A) of Grievance No. CTF-HC-19000329 as though they were fully stated herein. As a direct consequence of prison officials' failure to intervene, staging, failure to protect, and deliberate indifference described in Appeal Nos. CTF-S-18-02452, CTF-S-18-02454, CTF-HC-18001410, and other related appeals, CAUSED GRIEVANT'S PERMANENT DISABILITIES. Grievant has not yet been scheduled for an MRI. Grievance continues to experience the physical symptoms described in Section (A). grievant has not yet been monetarily compensated for the injuries caused by the events set forth herein. Note: Although the ILR indicates that the Closing Date is June 3, 2019, this grievance was not kicked under the door until Tuesday June 25th, 2019.

Dkt. No. 28-2 at 25 (emphasis in original) . On September 16, 2019, this grievance was denied at the headquarters' level. The headquarters' level denial identified the grievance as raising four issues: (1) administrative issue: monetary compensation; (2) non-medical custody: allegations of being accosted by custody staff, of custody staff "staging" events and failing to intervene or protect; and of deliberate indifference to issues described in grievances; (3) grievances: allegation of failure to intervene and protect, and of deliberate indifference to issues described in healthcare grievance tracking number CTF HC 180001410; and (4) disagreement with treatment by PCP provider regarding complaints of headaches, vision and hearing loss, dizziness/lightheadedness, ringing in ears, and neck, back, and foot pain. The denial specified that the non-medical custody events were not within the California Correctional Health Care Services' jurisdiction. The headquarters level decision denied the request for monetary compensation and the issue regarding custody staff as outside the jurisdiction of the health care grievance process and advised Plaintiff to pursue concerns regarding custody staff through the appropriate custody channels at his institution; denied the request to dictate administrative action with respect to healthcare grievance tracking number CTF HC 180001410, noting that a grievance which duplicated a grievance upon which a decision had been rendered was subject to rejection; and denied the requests regarding medical care on the grounds that Plaintiff had been provided appropriate medical care for his conditions and that disagreement with the decisions of the treatment team did not indicate that the

treatment team had engaged in staff misconduct or been deliberately indifferent to Plaintiff's healthcare needs. Dkt. No. 28-2 at 21-23.

**DISCUSSION**

**I. Motion for Summary Judgment for Failure to Exhaust Administrative Remedies**

**A. Summary Judgment Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020). If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). However, facts must be viewed in the light most favorable to the nonmoving party only if there is

a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

**B. Exhaustion Standard**

The PLRA sets forth the following exhaustion requirement: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. *Jones v. Bock*, 549 U.S. 199, 211 (2007). The administrative remedies need not be plain, speedy, and effective; need not satisfy minimum federal standards, and need not be capable of providing the form of relief sought. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (citing to *Porter v. Nussle*, 534 U.S. 516, 524 (2002) and *Booth v. Churner*, 532 U.S. 731, 741 (2001)).

The PLRA requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones*, 549 U.S. at 217–18. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id.* at 218.

Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014). Once the defendant has carried that burden, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* at 1172. A prisoner must provide evidence, not just

make conclusory allegations, to meet his burden to show that existing and generally available administrative remedies were effectively unavailable. *See Draper v. Rosario*, 836 F.3d 1072, 1079-80 (9th Cir. 2016). But as required by *Jones*, the ultimate burden of proof remains with the defendant. *Albino*, 747 F.3d at 1172.

**C. Analysis**

Defendants argue that that they are entitled to summary judgment because Plaintiff has not exhausted his administrative remedies for these claims as required by the PLRA. Dkt. No. 28. Specifically, Defendants argue that Healthcare Grievance No. CTF-HC-19000329 did not exhaust administrative remedies for the claim of deliberate indifferent to inmate safety because (1) it addresses the medical treatment, or lack thereof, received by Plaintiff for the injuries that he sustained in the riot, and not prison officials' failure to protect inmates from the riot; (2) the prison response to this grievance specifically advised Plaintiff that the Health Care Correspondence and Appeals Branch did not have jurisdiction over custody staff and that grievances regarding custody staff should be pursued through the regular grievance process; and (3) the prison responses to this grievance specifically declined to address the allegations regarding custody staff. Dkt. No. 28 at 8. Defendants further argue that the three grievances referenced in Healthcare Grievance No. CTF-HC-19000329 (Grievances Nos. CTF-S-18-02452, CTF-S-18-02454, and CTF-HC-18001410) also did not exhaust the Eighth Amendment claim in this action because Grievances Nos. CTF-S-18-02452 and CTF-S-18-02454 were submitted by other inmates, and because Healthcare Grievance No. CTF-HC-18001410 grieved an entirely separate issue (the issuance of work boots).

Plaintiff has not filed an opposition to Defendants' summary judgment motion, and he deadline to do so has since passed.[4]

The Court finds that Healthcare Grievance No. CTF-HC-19000329 does not exhaust the Eighth Amendment claim raised in this action (that defendants Koening and Freeman failed to take reasonable steps to protect Plaintiff from the August 5, 2018 riot). Viewed in the light most

---

[4] Plaintiff has not communicated with the Court since October 2, 2020. Dkt. No. 24.

favorable to Plaintiff, the Court presumes that Plaintiff sought to raise the Eighth Amendment claim in Healthcare Grievance No. CTF-HC-19000329 when he alleged "failure to intervene, staging, failure to protect, and deliberate indifference described in Appeal Nos. CTF-S-18-02452, CTF-S-18-02454." However, in responding to Healthcare Grievance No. CTF-HC-19000329, prison officials clearly informed Plaintiff that custody issues, i.e. non healthcare related issues, could not be pursued in a healthcare grievance, and directed Plaintiff to file a separate grievance with CTF raising these issues:

> Health care staff do not have jurisdiction over custody staff. As such, your concerns regarding alleged custody staff behavior or processing of custody appeals should be addressed through the appropriate custody channels at your institution.

Dkt. No. 28-2 at 21-22. The PLRA requires "proper exhaustion" of available administrative remedies, which means inmates must comply "with an agency's . . . critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91. Here, the CDCR's procedural rules required Plaintiff to raise his Eighth Amendment claim via the custody grievance procedure, because the Healthcare Correspondence and Appeals Branch could not provide relief for custody issues. Plaintiff did not file a custody grievance raising his Eighth Amendment claim, and thereby failed to properly exhaust his administrative remedies for this claim. *See, e.g., York v. Cate*, No. 13-CV-00868-JST (PR), 2015 WL 535824, at *6 (N.D. Cal. Feb. 9, 2015) (finding that administrative remedies unexhausted for claim regarding contraband surveillance watch ("CSW") procedures when prisoner-plaintiff raised the claim in healthcare grievance, third-level response to healthcare grievance clearly informed him that any challenges to CSW procedures could not be addressed in a health care grievance and should be raised in a custody grievance, and prisoner-plaintiff failed to file custody grievance raising this claim); *cf. Brown v. Valoff*, 422 F.3d 926, 942 n. 17 (9th Cir. 2005) (noting that Ninth Circuit's finding that prisoner-plaintiff had not exhausted his administrative remedies was supported by the fact that the grievance raised both a staff complaint and other issues and prison had informed inmate that those other issues must be grieved separately). Accordingly, the Court GRANTS Defendants' summary judgment motion for failure to exhaust.

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' summary judgment motion for failure to exhaust. This action is DISMISSED for failure to exhaust administrative remedies without prejudice to re-filing once administrative remedies are exhausted. The Clerk shall enter judgment in favor of Defendants and against Plaintiff, and close the file.

This order terminates Dkt. No. 28.

**IT IS SO ORDERED.**

Dated: 8/19/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge